G&G CLOSED CIRCUIT EVENTS, LLC,

*Plaintiff*,

v.

19TH & K, INC., *et al.*,

*Defendants*.

No. 19-cv-1422 (DLF)

## MEMORANDUM OPINION

Plaintiff G&G Closed Circuit Events, LLC ("G&G") brings this suit against 19th & K, Inc., d/b/a Ozio Martini & Cigar Lounge ("Ozio"), as well as the individual defendants Steven Christacos, George Christacos, and Sall Abdoulaye. Compl., Dkt. 1. G&G alleges that the defendants unlawfully intercepted a broadcast to which G&G owned the exclusive distribution rights, in violation of the Federal Communications Act of 1934, 47 U.S.C. § 605, or alternatively, the Cable Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553 (together, the "FCA"). Am. Compl., Dkt. 11. Before the Court is the individual defendants' motion to dismiss the amended complaint's claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss, Dkt. 13. For the following reasons, the Court will grant the motion in part and deny it in part.

## I. BACKGROUND[1]

### A. The Fight

On September 15, 2018, middleweight boxers Canelo Álvarez of Mexico and Gennady

---

[1] The factual allegations below are drawn from G&G's amended complaint. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (court considering motion to

Golovkin of Kazakhstan fought a highly anticipated championship bout on the Las Vegas Strip. G&G obtained the rights to distribute the fight via closed circuit television and encrypted satellite signal, Am. Compl. ¶ 32, and subsequently entered into agreements with various businesses in the District of Columbia, allowing those businesses to display the broadcast to their customers, *id.* ¶ 33. But G&G never entered any such agreement with Ozio. *Id.* ¶ 36.

Nevertheless, G&G's complaint alleges, the defendants or their agents, "with full knowledge that the [b]roadcast was not to be received and exhibited by entities unauthorized to do so," *id.* ¶ 35, "unlawfully intercepted, received and/or descrambled [the] satellite signal" of the broadcast, *id.*, and "exhibit[ed] the [b]roadcast at [Ozio] at the time of its transmission willfully and for purposes of direct or indirect commercial advantage or private financial gain," *id.* G&G's complaint supports this allegation with an affidavit from its private investigator, Jonathan Martin, who arrived at Ozio on the night of September 15, 2018 and witnessed the broadcast of the Álvarez-Golovkin bout being played on several televisions in the lounge. *Id.* Ex. A. Martin's affidavit states that he paid a $20 cover charge to enter the lounge and observed between 60 and 85 patrons over the course of his time inside. *Id.*

## B. The Individual Defendants

G&G's amended complaint seeks to hold three individual defendants (in addition to the corporate defendant 19th & K, Inc.) responsible for the alleged wrongdoing. The complaint provides the following information about those three individuals' roles. First, it alleges that Steven Christacos identifies himself on his LinkedIn profile as the "owner" of Ozio and was identified by his attorney at a meeting of the D.C. Alcoholic Beverage Control Board (the "ABC

---

dismiss must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor").

Board") as "Vice President and one of the principals" of Ozio.  *Id.* ¶ 8.  Second, it alleges that

George Christacos previously represented himself as "president of 19th & K, Inc." before the

ABC Board and is listed as a "governor of 19th & K, Inc." with the D.C. Department of

Consumer and Regulatory Affairs.  *Id.* ¶ 9.  Third and finally, it alleges that Sall Abdoulaye was

identified as Ozio's "general manager" before the ABC Board and is listed as such on Ozio's

Facebook page; Abdoulaye was also identified as a "person-in-charge" by the D.C. Health

Department.  *Id.* ¶ 10.

Aside from that information, the amended complaint contains no further allegations that

are specific to Steven Christacos, George Christacos, or Abdoulaye.  Instead, the complaint

merely repeats a series of legal conclusions with respect to each of them: that each "had the right

and ability to supervise the activities of Ozio . . .," *id.* ¶¶ 11, 17, 23; that each "had the obligation

to supervise the activities of Ozio . . .," *id.* ¶¶ 12, 18, 24; that each "specifically directed the

employees of Ozio . . . to unlawfully intercept, receive, and broadcast [p]laintiff's [b]roadcast"

and that those employees' actions "are imputable to [each of the defendants] by virtue of [their]

acknowledgement of responsibility for the operation of Ozio . . .," *id.* ¶¶ 13, 19, 25; that each

"had an obvious and direct financial interest in the activities of Ozio . . .," *id.* ¶¶ 14, 20, 26; and

that each "was a moving and active conscious force behind the operation, advertising, and

promotion of Ozio . . .," *id.* ¶¶ 16, 22, 28.

### C.    Procedural History

G&G filed its initial complaint on May 15, 2019.  Compl.  Ozio filed its answer and

moved to dismiss on June 21, 2019.  Answer, Dkt. 6; Mot. to Dismiss, Dkt. 8.  G&G then filed

an amended complaint on July 11, 2019.  Am. Compl.  The amended complaint alleges that the

defendants and/or their employees "unlawfully intercepted, received, and/or de-scrambled [the]

satellite signal" for G&G's broadcast, and "did exhibit the Broadcast at [Ozio] . . . at the time of its transmission willfully and for purposes of direct or indirect commercial advantage or private financial gain." *Id.* ¶ 35. The complaint contains two counts in the alternative, the first alleging that the defendants' actions violated 47 U.S.C. § 605(a), which prohibits the unauthorized reception and publication or use of communications such as the transmission at issue here, *see id.* ¶ 37; and the second alleging that they violated 47 U.S.C. § 553, which prohibits the unauthorized reception, interception and exhibition of any communications service offered over a cable system, *see id.* ¶ 44. The amended complaint sought: (1) a finding that the defendants had violated the FCA; (2) an injunction prohibiting the defendants from "interfering with [G&G's] programming," "intercepting, receiving, divulging, or displaying [G&G's] programming without [its] prior written consent," or "further violations"; (3) statutory penalties up to the maximum amount of $110,000 for the defendants' willful violation of 47 U.S.C. § 605(a); (4) statutory penalties up to the maximum amount of $60,000 for the defendants' violation of 47 U.S.C. § 553; and (5) attorney's fees, interest, and costs of suit. *Id.* ¶ 53.

On July 25, 2019, the individual defendants moved to dismiss the amended complaint's claims against them pursuant to Rule 12(b)(6). Mot. to Dismiss, Dkt. 13.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Rule 12(b)(6) allows a defendant to move to dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Id.* (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). But the assumption of truth does not apply to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.    ANALYSIS

The individual defendants contend in their motion to dismiss that G&G's amended complaint lacks allegations sufficient to impute liability to any of them for Ozio's interception of the broadcast. *E.g.*, Mot. to Dismiss at 3. The Court concludes that the amended complaint does not contain allegations sufficient to impute liability to George Christacos or Sall Abdoulaye, but that it does contain allegations sufficient to impute liability to Steven Christacos.

A.      **Vicarious Liability Under the FCA**

The appropriate standard for vicarious liability under the FCA remains an open question in this Circuit.  *See J&J Sports Prods., Inc. v. Kiflu*, No. 18-cv-225, 2018 WL 6530579, at *2 (D.D.C. 2018) ("[N]o court in this circuit appears to have decided this matter one way or the other . . . .").  Conducting a previous survey of the caselaw in this area, this court has noted that "a large body of cases—and, indeed, what appears to be the great weight of authority—suggests that an individual corporate officer may be held liable for a corporation's infringing acts under the FCA without veil piercing." *Joe Hand Promotions, Inc. v. Wright*, 963 F. Supp. 2d 26, 28 (D.D.C. 2013).  Such cases instead apply the "benefit and control" test, under which "the complaint must establish that the individual had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct." *Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 112–13 (E.D.N.Y. 2011) (quoting *J&J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009)).

The "benefit and control" test is not without its detractors.  *See, e.g.*, *Joe Hand Promotions, Inc. v. Sharp*, 885 F. Supp. 2d 953, 955–56 (D. Minn. 2012).  But it appears that the vast majority of courts to evaluate claims of vicarious liability in the FCA context have applied that test.  *See, e.g.*, *Wright*, 963 F. Supp. 2d at 28 (collecting cases); *J&J Sports Prods., Inc. v. Micherie, LLC*, No. 17-cv-1150, 2018 WL 4629301, at *3 (D.D.C. 2018) (collecting cases).  Moreover, the only district court from this circuit to have decided the issue to date has explicitly adopted the "benefit and control" test, in lieu of corporate veil-piercing principles.  *See Kiflu*, 2018 WL 6530579, at *2 ("The Court sees little reason to prevent a plaintiff harmed by corporate violations of § 605 from seeking recovery from an individual who directs that malfeasance for his or her own personal benefit.").  And other district courts have likewise defended the wisdom

of applying that test in this context. *See, e.g.*, *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 294–95 (E.D. Pa. 2014) (calling the "benefit and control" test a "well-developed doctrine . . . based on common legal principles" and deeming it "an appropriate test for assessing vicarious liability under 47 U.S.C. § 553").

This Court will follow the "great weight of authority," *Wright*, 963 F. Supp. 2d at 28, as well as Judge Cooper's opinion in *Kiflu*, in applying the "benefit and control" test to the question of vicarious liability under the FCA that this case presents. Any individual who has the "right and ability to supervise" the alleged piracy of a commercial broadcast and has an "obvious and direct financial interest" in that piracy, *Wright*, 963 F. Supp. 2d at 28, need not remain immune from FCA liability. Courts have imported the "benefit and control" test into the FCA context from the highly analogous context of copyright law, which in turn imported it from the common law. *See Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997); *Yakubets*, 3 F. Supp. 3d at 294–95. This Court will do the same here, rather than limit FCA recoveries to only those plaintiffs who can pierce the corporate veil according to formal corporate law requirements. *Cf. Lopes v. JetsetDC, LLC*, 994 F. Supp. 2d 135, 147 (D.D.C. 2014) (under traditional veil piercing principles, courts consider "whether corporate formalities have been observed; whether there has been commingling of corporate and shareholder funds, staff and property; whether a single shareholder dominates the corporation; whether the corporation is adequately capitalized; and, especially, whether the corporate form has been used to effectuate a fraud" (internal quotation marks omitted)).

**B. Application to the Individual Defendants**

In applying the "benefit and control" test, the Court will not rely on the allegations contained in paragraphs 11 through 28 of the amended complaint. Allegations made "on

information and belief will generally not be enough, even at the default judgment stage, to allow

the imposition of vicarious liability." *Yakubets*, 3 F. Supp. 3d at 301 (internal quotation marks

omitted); *see also 291 Bar & Lounge*, 648 F. Supp. 2d at 473. More importantly, the allegations

contained in these paragraphs are conclusory. *See, e.g.*, Am. Compl. ¶ 26 ("Abdoulaye . . . had

an obvious and direct financial interest in the activities of Ozio . . . ."). A complaint cannot

survive a motion to dismiss by virtue of "legal conclusion[s] couched as . . . factual

allegation[s]." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Accordingly, in

applying the "benefit and control" test, the Court will consider only factual allegations that are

specific to the three individual defendants.

### 1. Steven Christacos

The amended complaint alleges that Steven Christacos identifies himself on his LinkedIn

profile as the "owner" of Ozio and was identified by his attorney at a meeting of the D.C.

Alcoholic Beverage Control Board (the "ABC Board") as "Vice President and one of the

principals" of Ozio. Am. Compl. ¶ 8. As an owner and principal of Ozio, Steven Christacos

meets the requirements of the "benefit and control" test. As the owner of a small business,

Steven Christacos had the clear "right and ability to supervise" the acts of his agents or

employees, *Wright*, 963 F. Supp. 2d at 28, including their alleged unlawful interception of

G&G's broadcast. And it is reasonable to infer that as owner and principal, Steven Christacos

reaped an "obvious and direct financial benefit" from Ozio's unlawful interception of the

broadcast, *Wright*, 963 F. Supp. 2d at 28, given that Ozio charged $20 cover at the door and had

60 to 85 patrons present over the course of the fight, Am. Compl. Ex. A. Numerous district court

cases have concluded similarly: allegations of an individual's "ownership" role in a small

business enterprise satisfy the "benefit and control" test for FCA liability under circumstances

like these.  *See, e.g.*, *Kiflu*, 2018 WL 6530579, at \*2; *Joe Hand Promotions, Inc. v. Mooney's Pub Inc.*, No. 14-cv-1223, 2014 WL 4748272, at \*3 (C.D. Ill. 2014); *J&J Sports Prods., Inc. v. Q Café, Inc.*, No. 3:10–cv–02006–L, 2012 WL 215282, at \*4 (N.D. Tex. 2012); *Joe Hand Promotions, Inc. v. La Nortena Restaurant Inc.*, No. 10–cv–4965 (NGG), 2011 WL 1594827, at \*3 (E.D.N.Y. 2011).  Accordingly, the Court will deny the motion to dismiss with respect to Steven Christacos.

### 2. George Christacos

The amended complaint alleges that George Christacos previously represented himself as "president of 19th & K, Inc." before the ABC Board and is listed as a "governor of 19th & K, Inc." with the D.C. Department of Consumer and Regulatory Affairs.  Am. Compl. ¶ 9.  These allegations do not satisfy the "benefit and control" test because they do not establish that George Christacos had an "obvious and direct financial interest" in Ozio's unlawful interception of the broadcast.  *Wright*, 963 F. Supp. 2d at 28.  Unlike Steven Christacos, whom the complaint describes as an "owner" and "principal" of Ozio, George Christacos is alleged to hold only an officer role (as "president" of Ozio) and a director role (as a "governor" of Ozio).  Unlike owners or principals, officers or directors do not necessarily share in the profits of the enterprise. Therefore, the additional revenue obtained from displaying G&G's broadcast did not "obviously" result in any "direct" financial benefit for George Christacos.  *Wright*, 963 F. Supp. 2d at 28.  Accordingly, the allegations concerning George Christacos do not satisfy the "benefit and control" test, and the Court will grant the motion to dismiss with respect to him.

### 3. Sall Abdoulaye

The amended complaint alleges that Sall Abdoulaye was identified as Ozio's "general manager" before the ABC Board and is listed as such on Ozio's Facebook page, and that

Abdoulaye was also identified as a "person-in-charge" by the D.C. Health Department. Am. Compl. ¶ 10. These allegations fail the "benefit and control" test for the same reason as those regarding George Christacos: there are simply no grounds for the inference that as "general manager," Abdoulaye had an "obvious and direct financial interest" in the additional profits from the broadcast of the fight. Moreover, nothing in the amended complaint suggests that Abdoulaye received a share of the tips or nightly receipts, or otherwise indicates that he received a direct financial benefit from the alleged interception of the broadcast.

## CONCLUSION

For the reasons stated above, the individual defendants' motion to dismiss the amended complaint's claims against them, Dkt. 13, is granted with respect to George Christacos and Sall Abdoulaye, but denied with respect to Steven Christacos. The defendants' motion to dismiss the original complaint, Dkt. 8, is denied as moot. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

February 14, 2020